UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
Brownsville Division

United States District Court
Southern District of Texas
FILED

FEB 1 2 2004

Michael N. Milby
Clerk of Court

| | |
|---|---|
| MARK ANTHONY MARTINEZ<br>Federal Registration No. 94369-079<br>Unit A-4<br>U. S. Penitentiary-Pollock<br>P. O. Box 2099<br>Pollock, Louisiana 71467,<br><div align="right">Movant</div><br><br><div align="center">-vs-</div><br><br>UNITED STATES OF AMERICA,<br><div align="right">Respondent</div> | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | DOCKET NO.<br>1:00CR00403-002<br>B.03-221 |

MEMORANDUM IN SUPPORT OF MOTION TO
VACATE, SET ASIDE, OR CORRECT SENTENCE
PURSUANT TO 28 U.S.C. §2255

The movant, **MARK ANTHONY MARTINEZ, pro se,** respectfully submits the **MEMORANDUM IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. §2255** for the court's consideration in conjunction with his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 currently pending herein:

### PROCEDURAL BACKGROUND

The movant was named in an indictment returned by a grand jury in Brownsville, Texas, on September 26, 2000. The movant and his co-defendants were charged with conspiracy to possess with intent to distribute, more than 100 kilograms of marijuana and more than 500 grams of cocaine, in violation of 21 U.S.C. §§846, 841(a)(1) and 841(b)(1)(B). In addition, the movant and his co-defendants were charged in Counts Two and Three with the

substantive offenses of possessing with intent to distribute more than 500 grams of cocaine and more than 100 kilograms of marijuana in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(B), and 18 U.S.C. §2.

The movant and his co-defendants were tried before a jury from November 7, 2000, through November 9, 2000. At the conclusion of the trial, the jury returned a verdict of guilty with respect to all three counts against the movant and co-defendant Albert Thomas Reyes. The jury acquitted co-defendant Roberto Contreras. The court forthwith ordered presentence investigation reports and scheduled a sentencing hearing for February 6, 2001.

The movant appeared at sentencing on February 6, 2001, at which time the court imposed a 240-month term of imprisonment and a term of four years supervised release. The movant appealed his convictions and sentences to the United States Court of Appeals for the Fifth Circuit. The Court of Appeals for the Fifth Circuit rendered a judgment on July 11, 2002, affirming the movant's convictions and sentences without a written opinion.

The movant duly petitioned the Supreme Court of the United States for a writ of certiorari. The court advised him in a letter dated November 4, 2002, that his petition for a writ of certiorari had been denied.

## STATEMENT OF FACTS

On or about September 7, 2000, at about 8:40 P.M., a deputy sheriff from the Cameron County, Texas, Sheriff's Department conducted a traffic stop on a Ford Expedition which had allegedly

- 3 -

run a red light.  Albert Thomas Reyes was identified as the driver
of the vehicle, while the movant was identified as the passenger.
Upon conducting a consensual search of the vehicle, the deputy
found a green tote bag containing $41,004.00.  The deputy advised
the movant and Reyes that he was going to the Sheriff's Office
to count the money, and that they could follow him if they desired
a receipt for the money.

The green tote bag also contained some documents, including a
survey map and an earnest money contract between Albert Reyes and
John B. Allison relating to a purchase of real estate by Reyes.
The deputy advised the movant and Reyes to return the next day and
retrieve the documents.

The deputy contacted a detective with the Harlingen, Texas,
Police Department, Special Investigations Unit, and advised him of
the seizure of the currency.  The detective informed the deputy
that the movant had been arrested by the Harlingen Police
Department on August 29, 2000, after police executed a search
warrant and found approximately 13 grams of marijuana in his motel
room.  The detective also allegedly advised the deputy that an
investigator had received information on Reyes indicating that he
had a large quantity of marijuana stashed at a ranch located about
one mile north of the intersection of Farm Road 803 and Farm Road
510.  According to this information, Martinez had been seen
driving in the area on the day preceding the seizure of the cash.
According to the police officers involved, several deputies, the
detective, and other officers proceeded to Reyes' property.

The deputy and the HPD detective, under the guise of checking the ranch to ascertain if Reyes was the same person in question, proceeded to the property with a contingent of officers.  The residence was comprised of a mobile home with an add-on structure.  There was a shed within the curtilage of the residence and several vehicles upon the property.

There was evidence that several individuals had been upon the property and fled shortly before the arrival of the police.  Police officers found wet human footprints leading away from the canal situated immediately behind the residence.

The shed on the property had a broken window.  The officers represented that they observed what appeared to be bundles of "contraband" inside the shed.  Upon inspecting the bundles, the officers allegedly found 17 bundles of marijuana which weighed approximately 397 pounds.

Martinez' co-defendants, Robert Contreras and Albert Thomas Reyes, were arrested when police upon the property engaged in a high-speed chase with a van which had approached the property.

Other police officers at the ranch asserted that they observed contraband in plain view in the back seat of a Chevrolet Impala that was parked next to the shed.  The police alleged that a total of 55 bundles of marijuana weighing approximately 401 pounds were confiscated from the vehicle.

The police allegedly found some documents belonging to the movant in the vehicle underneath the bundles of marijuana found inside of a luggage bag, consisting of bail bond paperwork for the arrest of the movant on August 29, 2000, and a traffic citation.

The movant was arrested at approximately 12:30 A.M. that night. A deputy claimed that he observed a green Ford Expedition proceeding

- 5 -

on Farm Road 803.  The officer claimed that the vehicle was swerving from side to side and was failing to maintain a single lane.  Following his arrest, the movant was transported to the U. S. Customs Office in Brownsville, Texas for processing and investigation.

Several days subsequent to the confiscation of the marijuana, a U. S. Customs case agent alleged that upon taking samples of the marijuana that had been seized, approximately 9.1 pounds of cocaine were found in three of the bundles of marijuana.  The movant was originally arrested on charges relating solely to marijuana, but the charges were later amended to encompass the cocaine.

## ARGUMENT

I.   **THE SENTENCE WAS IMPOSED IN VIOLATION OF THE CONSTITUTION OR LAWS OF THE UNITED STATES AND IS OTHERWISE SUBJECT TO COLLATERAL ATTACK BASED UPON DEFENSE COUNSEL'S INEFFECTIVE ASSISTANCE IN ADVISING THE MOVANT TO CLAIM AN AUTOMOBILE CONTAINING 401 POUNDS OF MARIJUANA AND 4.1 KILOGRAMS OF COCAINE, RESULTING IN THE DEPRIVATION OF HIS SUBSTANTIVE AND PROCEDURAL DUE PROCESS RIGHTS GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

The movant had neither ownership nor possessory rights in and to the Chevrolet Impala in which the contraband was found.  He did not have any ignition keys for the vehicle on the date of the police raid, and despite vigorous efforts the keys were never found.  Moreover, he was not an occupant of the real property on the date in which the contraband was seized.  The only probative evidence of the movant's complicity in the drug-trafficking crimes charged in the three-count indictment consisted of evidence of the vehicle and inferences arising therefrom.

The movant did not own or possess the vehicle or the drugs in the vehicle and shed. He emphatically advised his counsel that he was not guilty of any of the offenses charged. Counsel filed a motion to suppress evidence under the Fourth Amendment, and the court conducted separate hearings upon the movant's standing to object to the seizure of evidence under the Fourth Amendment and the merits of the Fourth Amendment claim.

Despite his assertion of innocence to his counsel, counsel insisted that Martinez had absolutely no hope of prevailing in his criminal matter unless he claimed that he was on the property on the date of the search, that there were no persons on the property upon the departure of Martinez and his co-defendants, and that there was no other person on the property who had a right to use and possess the Chevrolet automobile. Thus, counsel compelled the movant to testify in the standing hearing regarding the foregoing facts. In doing so, he staked movant's entire defense upon the Fourth Amendment issue.

The court conducted a hearing to address the issue of standing prior to hearing evidence in support of the movant's motion to suppress made pursuant to the Fourth Amendment. The court ruled that the movant had standing to object to the introduction of evidence relating to the Chevrolet Impala automobile, but that he had no standing to object to evidence seized from the surrounding real property. The court subsequently heard the evidence bearing upon the Fourth Amendment claim, and denied the motion to suppress.

The movant's testimony in the hearing addressing the issue of standing placed the movant in a straitjacket in the jury trial which later ensued. The movant did not understand the legal

process to any extent, and he stated on the witness stand in
the standing hearing exactly what his counsel directed him to.
This pre-trial testimony had a preclusive effect upon the movant's
ability to take the stand during the jury trial in his own behalf.
In essence, the attorney's faulty advice and tactics during this
preliminary matter barred the movant from presenting any evidence
at all in the jury trial, especially his own testimony.
Conversely, the evidence against the movant was so weak and atten-
uated that any evidence that the movant might have presented in his
own behalf would have tipped the scales to such an extent that the
jury would have had no legal basis for finding the movant guilty
beyond a reasonable doubt.

The movant had a Sixth Amendment right to counsel during pre-
trial proceedings.  His claim of ineffective assistance of counsel
is predicated upon Strickland v. Washington, 466 U. S. 387 (1985),
in which the Supreme Court specifically held that "the purpose of
the effective assistance guarantee of the Sixth Amendment is...to
ensure that criminal defendants receive a fair trial."  466 U. S.
at 689.  To comply with Strickland, a court must do as follows:

> [J]udge the reasonableness of counsel's challenged
> conduct on the facts of the particular case, viewed
> as of the time of counsel's conduct.  A convicted
> defendant making a claim of  ineffective assistance
> must identify the acts or omissions of counsel that
> are alleged not to have been the result of reason-
> able professional judgment.  The court must then
> determine whether, in light of all the circumstances,
> the identified acts or omissions were outside the
> wide range of professionally competent assistance.
> In making that determination, the court should keep
> in mind that counsel's function, as elaborated in
> prevailing professional norms, is to make the adver-
> sarial testing process work in the particular case.
> 466 U. S. at 690.

In order to obtain a reversal of a conviction under Strickland, a defendant must prove two elements.  First, the representation of counsel must be "deficient," i.e. counsel's performance must fall below an objective standard of reasonableness.  Secondly, the defendant must prove that counsel's deficient performance prejudiced him to the extent that the outcome of the proceeding is unreliable or fundamentally unfair.

When counsel predicated his entire defense upon the remote possibility that the court would grant the motion to suppress and exclude the evidence relating to the Chevrolet automobile, his representation fell below an objective standard of reasonableness. Client's insistence upon the movant testifying to facts that were not true in the standing hearing objectively vitiated any testimony that could have been introduced in the jury trial.  If the movant had taken the stand in his own defense at trial, the prosecution's impeachment during cross-examination would have been downright brutal. Under the contemplation of Strickland, counsel's deficient represen- tation undermined the adversarial process to the extent that the trial could not be relied upon as having produced a just result.

Counsel's deficient representation during the standing hearing effectively deprived the movant of his right to take the stand. In the absence of the impeachment evidence which derived from the standing hearing, the prosecution had no factual basis for demon- strating proof beyond a reasonable doubt.  Thus, the movant was prejudiced in two distinct areas.  First, in ruling upon the movant's motion for judgment of acquittal at the termination of the prosecution's case-in-chief, the court would have been compelled to grant the motion. Secondly, the jury verdict would have been different because counsel would have been able to disassociate the movant from the inculpatory

evidence elicited in the standing hearing.  Under the facts and
circumstances considered as a whole, the movant was undoubtfully
prejudiced to the extent necessary to mandate a reversal under
Strickland.

The movant is not procedurally barred from presenting his
ineffective assistance of counsel claim at this juncture.  In
Kimmelman v. Morrison, 477 U. S. 365, 106 S.Ct. 2574, 91 L.Ed.2d
305 (1986), the Supreme Court of the United States ruled that the
restrictions on federal habeas corpus review of Fourth Amendment
claims imposed by Stone v. Powell, 428 U. S. 465, 96 S.Ct. 3037,
49 L.Ed.2d 1067 (1976), do not apply to Sixth Amendment claims of
ineffective assistance of counsel based primarily on incompetent
representation with respect to a search and seizure issue:

> In determining that federal courts should withhold
> habeas review where the State has provided an oppor-
> tunity for full and fair litigation of a Fourth
> Amendment claim, [Stone] found it crucial that the
> remedy for Fourth Amendment violations provided by
> the exclusionary rule 'is not a personal constitu-
> tional right.'  [The] right of an accused to counsel
> is beyond question à fundamental right.  Without
> counsel, the right to a fair trial itself would be
> of little consequence, for it is through counsel that
> the accused secures his other rights.

The United States Court of Appeals for the Fifth Circuit ruled
in Kirkpatrick v. Butler, 870 F.2d 276, 283 (5th Cir. 1989), and
in Martin v. Maxey, 98 F.3d 844 (5th Cir. 1996), that counsel's
failure to move to suppress evidence, when the evidence would have
been suppressed if objected to, can constitute deficient representation
unless counsel's failure was due to a tactical decision.  The opposite
reasoning should apply in this case.  Specifically, if counsel,
through a violation of the rules of professional responsibility, causes
a defendant to testify as to inaccurate facts and stakes his entire
defense upon a motion to suppress which is questionable at best, he

cannot legally attribute his deficient representation to a tacti-
cal decision, thereby rationalizing his duties under Strickland.
The most objectively reasonable decision would have been to refrain
from participating in the motion to suppress.  The movant's two
co-defendants participated in the motion to suppress, and the
movant's counsel could have ridden on the coattails of the co-defendants
in the joint trial if the court had granted the motion.

> II.    **THE SENTENCE WAS IMPOSED IN VIOLATION OF
> THE CONSTITUTION OR LAWS OF THE UNITED
> STATES AND IS OTHERWISE SUBJECT TO COLLA-
> TERAL ATTACK BASED UPON DEFENSE COUNSEL'S
> STIPULATION TO THE ADMISSIBILITY OF
> LABORATORY ANALYSES OF THE COCAINE, HIS
> WAIVER OF THE MOVANT'S RIGHT TO OBJECT TO
> THE CHAIN OF CUSTODY OF THE EVIDENCE, AND
> HIS ADMISSION THAT THE ORIGIN OF THE EVI-
> DENCE WAS THE REAL PROPERTY OF A CO-
> DEFENDANT**

Agent Kristen Rosenbeck, a criminal investigator with the
United States Customs Service, testified that the controlled
substances were seized on September 7, 2000.  The movant was
originally charged with marijuana-related charges, but his charges
were later amended to include cocaine.

The cocaine alleged in Counts One and Two mysteriously surfaced
on September 12, 2000, five days following the seizure of all evidence
under circumstances which give rise to a reasonable inference that
it was planted among the bundles of marijuana by police officers or
other executive personnel to maximize the punishment which would
eventually be sought.  Ms. Rosenbeck testified that the cocaine
was not found until five days after the alleged seizure.  She stated
that she went to the evidence vault to sample the marijuana "for
its contents" and that "during the sampling process" she discovered
"one of the bundles of marijuana contained cocaine."  She testified

- 11 -

that this "discovery" prompted her to examine other bundles,
which resulted in the discovery of more cocaine.  The total weight
of the cocaine allegedly found amounted to 4.1 kilograms.
(Tr., pp. 280-285).  She was allowed to testify, without objection,
that the cocaine came from the car as opposed to the shed, even
though she was not present during the seizure on September 7, 2000.
(Tr., p. 282).

Defense counsel made evidentiary concessions which relieved the
prosecution of its duty to lay a proper foundation for the admissi-
bility of both the marijuana and cocaine and prove the chain of
custody of the evidence.  Defense counsel stipulated that the jury
would be allowed to accept as true that if Scott Wiznisky, a
forensic chemist with the DEA, were to testify, he would testify
that, inter alia, the bundles of marijuana and cocaine in the
government's possession were, in fact, marijuana and cocaine.  The
stipulation further obviated the need for testimony from the prose-
cution establishing that the cocaine was actually found at the scene
of the crime by deeming it true that the cocaine was seized on
September 7, 2000, "from the property located 1 mile north of Farm Road
510 on Farm Road 803."  Counsel caused the movant to sign the
stipulation, even though the movant had absolutely no idea what he
signing, and, in fact, did not know what a stipulation is.  (Tr.,
pp. 6-7).

The prosecution had no scientific evidence, including fingerprint
evidence, which would demonstrate, beyond a reasonable doubt, that
the cocaine was concealed in the bundles of marijuana and was not
planted or tampered with during the five days which elapsed between
the seizure of the marijuana and the alleged discovery of the cocaine.

If the police officers in the investigation had been as meticulous as they represented at trial, the cocaine would have been inevitably discovered on the date of seizure when the police removed bundles from the green bag in which the cocaine was allegedly found for the purpose of finding papers inside belonging to the movant.

Defense counsel's stipulation essentially relieved the prosecution of its burden under Rule 901(a) of the Federal Rules of Evidence of proving by evidence sufficient to support a finding that the cocaine and marijuana testified to at trial and admitted as evidence was, in fact, cocaine and marijuana which was seized from the farm and shed on September 7, 2000.  The prosecution failed to prove the chain of custody of the evidence from September 7 - September 12, and from the date of removal from the evidence room until its return from the laboratory.  In addition, the stipulation allowed the admission of the Certificates of Analysis without any authentication or identification by an expert witness sufficient to support a finding that the matter in question was what the United States purported it to be.

When the evidence is not readily identifiable or when a witness has failed to observe its uniqueness, and is susceptible to alteration by tampering or contamination, the courts require a foundation more stringent than in cases involving objects readily identifiable and resistant to change.  The evidence at issue herein, especially the cocaine, is not readily identifiable and resistant to change.  Under these circumstances, the prosecution was vested with a duty to prove a chain of custody with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with.  United States v. Johnson, 977 F.2d 1360 (10th Cir. 1992), cert. den. 122 L.Ed.2d 170, 113 SCt. 1024 (1993).

Case law emanating from the United Court of Appeals for the Fifth Circuit on the subject of chain of custody in drug cases is longstanding and clear. In <u>United States</u> v. <u>McDowell</u>, 539 F.2d 435 (1976), the Fifth Circuit, quoting <u>United States</u> v. <u>Brown</u>, 482 F.2d 1226 (8th Cir. 1973), articulated the criteria for admission of exhibits in the context of chain of custody:

> [T]here must be a showing that the physical exhibit being offered is in substantially the same condition as when the crime was committed...Factors to be considered in making the determination of admissibility include the nature of the article, the circumstances surrounding the preservation and custody, and the likelihood of others tampering with it. If upon the consideration of such factors, the trial judge is satisfied that in reasonable probability the article has not been changed in any important respect, he may permit its introduction in evidence. 539 F.2d at 437.

The United States Court of Appeals elucidated the criteria set forth in <u>McDowell</u> in <u>United States</u> v. <u>Barnes</u>, 586 F.2d 1052 (5th Cir. 1978):

> [T]he testimony of the three men who handled the evidence established that the exhibit remained sealed when it was not being tested...All that is necessary for conviction is a measurable amount of the controlled substance...In the absence of a showing of physical tampering in any relevant respect, we uphold the decision of the trial judge. 586 F.2d at 1056.

There is also no dearth of case law governing the admissibility of laboratory reports concerning analyses of experts. In <u>United States</u> v. <u>Ladd</u>, 885 F.2d 954 (1st Cir. 1989), the court dealt with an unexplained discrepancy between identification number assigned to a blood sample extracted from the corpse of an alleged heroin distributor and the number of samples received by a private forensic laboratory. The court ruled that the chain of custody was broken and that the laboratory results should not have been admitted against a defendant accused of distribution of heroin.

- 14 -

The court in <u>Ladd</u> placed great emphasis upon the prosecution's failure to clarify the discrepancy by presenting the testimony of the laboratory expert, the person who released the sample, and the courier who logged the evidence.  The court held that there was no competent proof to indicate that the sample extracted from the corpse was the actual sample tested.  Thus, "the linkage was not merely rusty--it had been parted."  885 F.2d at 957.

The prosecution in the movant's proceeding was allowed to abdicate its responsibilities to prove the chain of custody between September 7, 2000, when the evidence was initially seized, and September 12, 2000, when the cocaine was allegedly found commingled with marijuana, by consummating an agreement with defense counsel. Defense counsel received absolutely no concessions as a quid pro quo for his agreement, and there was absolutely no basis for relieving the prosecution of its responsibilities.

A host of individuals could have had access to the storage facility for evidence in which the cocaine was found.  Cocaine is not a readily identifiable substance and is extremely susceptible to alteration by tampering or contamination.  There is a reasonable inference to be drawn from the circumstances herein that the evidence was not only tampered with, but was in fact planted in the bundles of marijuana.  Assuming that the cocaine was not planted, the evidence is still inadmissible based upon the prosecution's failure to show that it was in the same condition as when the crime was committed.

Defense counsel's representation with respect to the chain of custody of the marijuana and cocaine is fatally deficient.  Under proper instructions, the jury would have had no evidentiary basis

for finding the movant guilty of any of the charges.  In a case
of this nature, it is highly unlikely that law enforcement
officers failed to examine the marijuana bundles in detail, when
they went through the effort of examining the bag in which the
bundles were located with precision.

> III.  **THE MOVANT WAS DEPRIVED OF HIS RIGHT TO
> THE EFFECTIVE ASSISTANCE OF COUNSEL GUAR-
> ANTEED BY THE SIXTH AMENDMENT WHEN HIS
> COUNSEL FAILED TO PRESENT THE FACTS IN
> TOTO DURING THE HEARING CONDUCTED TO
> RESOLVE THE MOTION TO SUPPRESS UNDER THE
> FOURTH AMENDMENT TO THE U. S. CONSTITUTION**

Even though counsel staked his entire defense on the motion to
suppress the admissibility of the evidence pursuant to the Fourth
Amendment,  counsel failed altogether to elicit and present the
facts necessary to sustain the movant's burden of proof.  Thus,
counsel violated his duties under the Sixth Amendment, Kimmelman,
and Strickland.

Although the trial judge in the motion to suppress had photo-
graphs introduced as evidence depicting the shed and vehicle in
which controlled substances were allegedly found vis a vis adjacent
property, there was no evidence introduced proving that the contents
of the shed and vehicle were visible from adjacent property.  The
prosecution proceeded under the open fields doctrine, and based upon
this discrepancy, there was no probable cause and no applicable
exceptions to the Fourth Amendment requirement for a search warrant.

Counsel also failed to prove, despite the  existence of avail-
able evidence, that the curtilage to the property encompassed the
shed and the vehicle wherein the key evidence was allegedly found.
Counsel allowed the prosecution to get by with characterizing the
total parcel of real estate as a "ranch," when there was no evidence

that the owner of the property, Mr. Reyes, intended to ranch or farm on the subject property.   In fact, the evidence points to the contrary.

The circumstances existing at the time of the warrantless search belie reliance upon the open field doctrine.   The officers asserted that they went upon the property for the purpose of procuring con-sent to search.   When no one was found upon the property, the police proceeded to search the entire parcel in a detailed manner.   When they came upon the shed, they found a large amount of marijuana.

Counsel wholly failed to conduct necessary cross-examination and elicit testimony from law enforcement officers that they were unable to identify the bundles as containing marijuana before they entered the interior of the vehicle and removed the bundles of marijuana from the surrounding blanket and green bag in which they were located.   Counsel made no argument surrounding the search of the green bag, the contents of which were definitely not in plain view.

Defense counsel failed to shoulder his duty of providing the reasonably effective assistance of counsel to which the movant was entitled under the Sixth Amendment.   His deficiencies in this area were extremely prejudicial in view of his representation to the movant that the movant would prevail under the Fourth Amendment and his tactical decision to forego all evidentiary options at trial in favor of the motion to suppress.

### IV.   MARTINEZ WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT WHEN DEFENSE COUNSEL FAILED TO BRING ADEQUATE ADVERSARIAL SKILLS TO THE PROCEEDING AND EFFECTIVELY ADDRESS THE ISSUE OF CONCERT OF ACTION AND CONSTRUCTIVE POSSESSION OF THE CON-TRABAND SEIZED

The United States' case against the movant was wholly circum-
stantial.  The prosecution did not present sufficient evidence to
prove the movant's concert of action with alleged co-conspirators
with respect to the conspiracy charge.  In addition, the prosecution
had absolutely no facts tending to demonstrate that the movant had
the requisite knowledge for exercising dominion and control or had
the right to control the inculpatory evidence seized.

Martinez was not arrested on the subject property, nor did police
observe him upon the property.  His mere presence upon the property
at other times cannot give rise to an inference that he acted in
concert with others upon the property to possess the contraband.
His presence upon the property at other times prior to the search
was entirely innocuous, i.e. he was there performing landscaping
services, attending a barbecue, and generally socializing with
other individuals.  The record is wholly inadequate with respect to
evidence that the movant acted in concert with alleged co-conspirators
to the extent necessary to support either the conspiracy charge or
the substantive offenses.

The movant's association with the Chevrolet automobile does not
even remotely prove that he had dominion and control over the vehicle,
nor does the evidence show that he had the right to control the vehicle.
The evidence revealed that an unidentified male wearing a red shirt
operated the vehicle at different times.  The keys to the vehicle were
never found, and there was no evidence adduced that the movant had
the keys to the vehicle or stored anything in the vehicle.

The movant's bond documents were found in the vehicle, along
with a wallet and drivers license of another person.  In addition,
personal papers belonging to yet another person were found in the
vehicle.  These items were irrelevant with respect to dominion and
control and concert of action.

- 18 -

The movant was convicted of the crime of conspiracy as well as the underlying substantive offenses.  The Supreme Court of the United States has consistently held that the prosecution must prove concert of action among the participants in a conspiracy.  In Iannelli v. United States, 420 U. S. 770, 43 L.Ed.2d 616, 95 S.Ct. 1284 (1975), the court explained the rationale for the requisite concert of action:

> This settled principle derives from the reason of things in dealing with socially reprehensible conduct:  collective criminal agreement--partnership in crime--presents a greater potential threat to the public than individual delicts.  Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality... 420 U. S. at 778, quoting Callanan v. United States, 364 U. S. 587, 5 L.Ed.2d 312, 81 S.Ct. 321 (1961).

The record is devoid of any proof that the movant acted in concert with the alleged co-conspirators.  Rather, the defendants engaged in discrete, independent acts.  Counsel failed to address the absence of proof of concert of action.

Counsel likewise failed to hold the prosecution to its burden of proof with respect to the element of possession in the substantive offenses.  The United States Court of Appeals for the Fifth Circuit held in United States v. Quiroz-Hernandez, 48 F.3d 858 (5th Cir. 1995), that conviction for possession of drugs with the intent to distribute requires the government to prove that the defendant knowingly possessed contraband with intent to distribute.  The court emphasized that the government may prove actual or constructive possession of drugs by either direct or circumstantial evidence.

Since the movant was not observed on the property or in the automobile at the time of the commission of the substantive offenses, he cannot be found guilty of actual possession of the contraband.

Thus, the government was required to prove constructive possession of the drugs.

In order to prove constructive possession of the drugs, the government was required to show that the movant controlled, or had the right or power to control the automobile and the shed. Mere proximity to the contraband is insufficient. United States v. Shabazz, 993 F.2d 431 (5th Cir. 1993), and Quiroz-Hernandez, 48 F.3d at 865. Knowledge of the presence of contraband may ordinarily be inferred from the exercise of control over a vehicle in which it is concealed. United States v. Garcia, 917 F.2d 1370 (5th Cir. 1990).

The movant was not proven to have been upon the property or in the Chevrolet automobile during times immediately preceding the seizure of the drugs. In the absence of defense counsel's unethical, faulty advice in the standing hearing, there was no evidence that the movant had the right to control the vehicle. He had no possessory or ownership interest in the shed in which marijuana was found. Although his bond papers were found in the vehicle, there was evidence found in the vehicle that two other people had in fact controlled the vehicle. The absence of the keys and the failure to find them constitutes incontrovertible proof that the movant either controlled the vehicle or had the right to control the vehicle. There is no evidence, either direct or circumstantial, proving the essential element of possession of the drugs seized.

Defense counsel did not subject the evidence bearing upon concert of action in the conspiracy charge and constructive possession of the contraband in the drug-related charges to adversarial testing. In Strickland, the court, relying upon Adams v. United States, 317 U. S. 269, 87 L.Ed. 268, 63 S.Ct. 236 (1942), and Powell v. Alabama, 77 L.Ed. 158, 287 U. S. 45, 53 S.Ct. 55 (1932), described the importance

of effective defense counsel in fulfilling the requirements of
our adversarial system:

> [A] fair trial is one in which evidence subject
> to adversarial testing is presented to an im-
> partial tribunal for resolution of issues defined
> in advance of the proceeding.  The right to counsel
> plays a crucial role in the adversarial system
> embodied in the Sixth Amendment, since access to
> counsel's skill and knowledge is necessary to
> accord defendants the 'ample opportunity to meet
> the case of prosecution' to which they are entitled.
> 466 U. S. at 685.

Under the contemplation of Strickland, defense counsel
did not act as the "counsel" guaranteed the movant by the Sixth
Amendment, and the trial cannot be relied upon as having produced
a just result.  Counsel failed to utilize the skills necessary to
subject evidence of concert of action and possession of contraband
to adversarial testimony.  He also failed to conduct an appropriate
investigation that would have enabled him to exercise the requisite
adversarial skills.  Thus, counsel's representation was deficient
in violation of the movant's right to the effective assistance of
counsel under Strickland.

Defense counsel's representation severely prejudiced the movant.
Counsel's failure to address concert of action and possession was
so serious as to deprive the defendant "of a fair trial, a trial whose
result is reliable."  466 U. S. at 687.  Proper investigation and
adversarial testing of the evidence of concert of action and possession
of the contraband would have affected the outcome of the proceeding
in two possible ways.  Counsel would have had the occasion to make an
effective motion for judgment of acquittal at the conclusion of the
prosecution's case-in-chief.  If such motion failed, he would have
had an opportunity to insist upon proper instructions and argue the
concepts of concert of action and possession to the jury in his closing
argument.  At any rate, the trial's outcome would have been different.

- 21 -

### V. THE MOVANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT WHEN COUNSEL DIVIDED HIS LOYALTY TO HIS CLIENT AND AGREED WITH CO-COUNSEL TO APPORTION THE CROSS-EXAMINATION OF GOVERNMENT WITNESSES AND THE INTERJECTION OF OBJECTIONS WARRANTED IN SUCH WITNESSES' TESTIMONY

The interests of the movants and his two co-defendants were highly conflicting and one counsel could not have simultaneously represented two of the defendants in the criminal trial. Reyes was prepared to testify on behalf of the movant, but the legal positions of all of the three co-defendants were hopelessly irreconcilable. This inherent conflict of interest existed at all stages of the trial.

Notwithstanding the conflict of interest, defense counsel for the movant entered into an agreement with other counsel providing that, during the course of the trial, the duty of cross-examining witnesses testifying in the government's case-in-chief and interjecting appropriate objections to the testimony of government witnesses, would be apportioned among all defense counsel.

The Supreme Court of the United States opined in _Strickland_ that representation of a criminal defendant entails certain "basic duties." Counsel has a duty to assist his client, "and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest." 466 U. S. at 685, and _Cuyler_ v. _Sullivan_, 446 U. S. 344, 64 L.Ed.2d 333, 100 S.Ct. 1708 (1980).

A review of the transcript of trial reveals that counsel was placed in a straitjacket with respect to the registration of objec-

tions to the testimony of government witnesses and the cross-examination of such witnesses.  The three co-defendants had diverging interests which mandated independent cross-examination. The evidence against the movant was extremely weak vis a vis the other co-defendants, and the sharing arrangement entered into by counsel did nothing but align the movant with the others in the eyes of the jury.

Under Cuyler, the movant was entitled to independent representation by an attorney who zealously pursued his interests and his interests alone.  Since the movant was deprived of such right, his counsel was deficient in view of Strickland.  The jury was left to infer from the apportionment arrangement that the movant was "in the same boat" as the other two co-defendants, thereby thoroughly undermining the likelihood of a fair and just verdict by the jury.

An objection or session of cross-examination of government witnesses on behalf of all co-defendants necessarily inhibited counsel with respect to their individual defendants.  Defense counsel was required to conduct cross-examination of witnesses and the interjection of objections based upon the cumulative best interests of all co-defendants.  Defense counsel was vested with a duty to give the movant his undivided loyalty.  Counsel was deficient in his representation of the movant to the extent that he shared in the responsibility for representation of co-defendants.

These deficiencies meet the ordinary requisites for prejudice. However, according to the foregoing authorities, the presence of a conflict of interest elevates the prejudice to prejudice per se. Therefore, the movant is not required to prove actual prejudice.

### VI. THE MOVANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT WHEN DEFENSE COUNSEL REPEATEDLY ALLOWED THE INTRODUCTION OF ALLEGED CO-CONSPIRATORS' STATEMENTS WHICH DID NOT COMPORT WITH FEDERAL RULE OF EVIDENCE 801(D)(2)(E)

Defense counsel failed to object to inadmissible statements of alleged co-conspirators which were not made in the course of and in furtherance of the conspiracy charged in Count One. The admission of such statements at trial constitutes a fundamental defect amounting to a miscarriage of justice.

Counsel was extremely deficient in his representation of the movant with regard to the 801(d)(2)(E) statements by reason of his failure to conduct a pre-trial hearing challenging the admissibility of such statements, as well as his failure to make timely objections at trial. The apportionment of the responsibilities of cross-examination and the registration of objections precluded counsel from performing his duties under Federal Rule of Evidence 801(d)(2)(E).

In the absence of the fundamental defect surrounding the 801(d)(2)(E) statements, the jury would not have been able to consider this highly inflammable and prejudicial evidence and the outcome of the trial would have been different. Thus, the movant's claims fall within the ambit of Strickland's requirements for an order mandating a new trial.

### VII. THE MOVANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT WHEN HIS COUNSEL ALLOWED EVIDENCE OF OTHER CRIMES IN THE RECORD IN VIOLATION OF FEDERAL RULE OF EVIDENCE 404(B)

The United States introduced evidence of an uncharged prior possession of thirteen grams of marijuana which was unrelated to the instant conspiracy and substantive charges.  The court preserved counsel's objection to the admission of this evidence.

During the testimony of Ricardo Perez, a Cameron County Sheriff's Department deputy who stopped the movant and Reyes, testified about the stop.  A search of the vehicle led to the discovery of a large sum of money.  There was sufficient evidence presented at trial to show that the movant had no interest in the money and had no association with the money.

The prosecution was allowed to introduce a photograph as evidence which purported to depict the blue bag in which the foregoing thirteen grams of marijuana was found.  The evidence linked the movant to a bail bond receipt for an unrelated charge which had not resulted in a final conviction and was still pending in court at the time. Harlingen Police Officer Leo Silva was allowed to testify about a previous arrest of the movant at the Sun Valley Motel in Harlingen, Texas for possession of fourteen grams of marijuana.

Counsel did not argue the law and the evidence to the court, and advanced halfhearted objections for the record.  The evidence clearly impugned the movant's character, and its probative value was far outweighed by the prejudicial impact upon the movant.

Federal Rule of Evidence 404(b) states, in relevant part, as follows:

> **Federal Rule of Evidence 404(b):**  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The movant would have stipulated that there were documents in the vehicle belonging to him, without stipulating as to the prior bad acts. The testimony of Office Silva was superfluous and had absolutely no purpose except as character evidence. The movant had not opened the issue of character, and the evidence was clearly inadmissible under Rule 404(b) of the Federal Rules of Evidence.

The character of the defendant in a criminal case is not an issue in the case, unless the defendant chooses to make it one. Greer v. United States, 245 U. S. 559, 62 L.Ed. 469, 38 S.Ct. 209 (1918). The prosecution is entitled to show the defendant's bad character if the defendant introduces evidence showing that he is a person of good character. United States v. Garber, 471 F.2d 212 (5th Cir. 1972). An inquiry regarding the defendant's character in the prosecution's case in chief is not rejected because character is irrelevant but because the inquiry weighs too much with the jury and causes them to prejudge one with a bad general record, thus denying him a fair opportunity to defend against a particular charge. Michelson v. United States, 335 U. S. 469, 93 L.Ed. 168, 69 S.Ct. 213 (1948).

The jury in this case was allowed to hear evidence of prior bad acts which were wholly unrelated to the issues before the court. This evidence was sufficient to convince the jury that because the movant engaged in drug-related offenses before, he is, ipso facto, guilty in this instance.

Defense counsel's representation with respect to the violation of Rule 404(b) as well as the due process violations attendant to the violation was, without doubt, deficient under Strickland and its progeny. This evidence tainted the jury trial to such an extent that the entire proceeding was rendered unfair. In the absence of

counsel's deficient representation, the outcome of the jury trial
would have been in the movant's favor.

### VIII. THE MOVANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT BY REASON OF AMBIGUITIES IN THE VERDICT AND JUDGMENT AMOUNTING TO A DEPRIVATION OF DUE PROCESS UNDER THE FIFTH AMENDMENT AND A DENIAL OF JURY TRIAL RIGHTS UNDER THE SIXTH AMENDMENT

The alleged conspiracy in Count One was charged in multiple
objects utilizing conjunctive language. Counsel did not address
the defects and problems arising from the conjunctive language at
any point in the proceeding. Counsel wholly and totally failed to
insure that the conjunctive language did not result in an ambiguous
verdict by insisting upon an instruction advising the jury that it
must reach a unanimous verdict with respect to each object of the
conspiracy.

United States v. Rhymes, 196 F.3d 207 (4th Cir. 1999), and
United States v. Dale, 178 F.3d 429 (6th Cir. 1999), addressed the
question of an ambiguous verdict under Edwards v. United States,
523 U. S. 511, 140 L.Ed.2d 703, 118 S.Ct. 1475 (1998). In Edwards,
the defendant was charged with conspiracy to distribute both cocaine
and cocaine base. The jury in Edwards returned a general verdict of
guilty, which contained no indication of whether it found the con-
spiracy to be encompassed by cocaine, cocaine base, or both. The
sentence was upheld only because "the sentences imposed here were
within the statutory limits applicable to a cocaine-only conspiracy,
given the quantities of that drug attributed to each petitioner."
118 S.Ct. at 1477.

The court in Edwards indicated that its decision would have been
different "if their sentences exceeded the statutory maximum for a
cocaine-only conspiracy: That is because a statute trumps a higher

sentence set forth in the Guidelines." 118 S.Ct. at 1477. <u>Edwards</u>
approved and relied heavily upon the following rule articulated by
the court in <u>United States</u> v. <u>Orozco-Prada</u>, 732 F.2d 1076 (2d Cir.
1984):

> The Second Circuit held that a defendant convicted
> under a general verdict of conspiracy to violate
> §841 may be sentenced only up to the statutory
> maximum for the least-punished offense on which
> that conspiracy verdict might have been based.
> 118 S.Ct. at 1083-84.

See also <u>United States</u> v. <u>Quicksey</u>, 525 F.2d 337 (4th Cir. 1975).

The facts in the current proceedings are distinguishable from
<u>Edwards</u>, while the rulings in <u>Dale</u> and <u>Rhynes</u> are controlling.
In <u>Rhynes</u>, the court found it impossible to determine the object
or objects--sale of heroin, cocaine, cocaine base, or marijuana--
upon which the conspiracy conviction was based. <u>Rhynes</u>' initial
premise was that in a multi-object conspiracy in which one of the
objects, such as marijuana, gives rise to a lesser sentence, <u>Edwards</u>
and <u>Quicksey</u> bar the district court from imposing a sentence in
excess "of the statutory maximum for the least-punished object on
which the conspiracy conviction could have been found." 196 F.3d
at 238. The court extrapolated as follows from this initial premise:

> In this case, the conviction may have been based
> on a conspiracy to distribute either heroin,
> cocaine, cocaine base, or marijuana (or any com-
> bination of these substances). Thus, no defendant
> could be sentenced for more than the statutory
> maximum for the least-serious, single-drug con-
> spiracy of which he may have been convicted
> [Citing Dale, 178 F.3d at 433]. 196 F.3d at 239.

The current issue was tailormade for the holding in <u>Richardson</u>
v. <u>United States</u>, 119 S.Ct. 1707 (1999). <u>Richardson</u> held that
when the alternative means in a conspiracy are conceptually separate
and distinct, and there are circumstances creating a genuine
risk that a conviction may occur as a result of different jurors

- 28 -

concluding that the defendant committed different acts, the
court must instruct the jury on the necessity for unanimity of
theory.   The alternative means in the movant's conspiracy count,
namely, marijuana and cocaine, are conceptually separate and
distinct, and the special circumstances to which the Supreme Court
alluded are present throughout the course of the proceedings.

Defense counsel made no effort to insure that the jury was
properly instructed as to unanimity of multiple objects as required
by Richardson.   The jury was allowed to rule upon the multiple
objects in a haphazard manner.   The least-punished object is
marijuana, which is punishable under 21 U.S.C. §841(b)(1)(B).   Title
21 U.S.C. §841(b)(1)(B) has a statutory range of punishment of five
to forty years.   The cocaine is punishable under 21 U.S.C. §841(b)(1)(A),
in which the statutory range of punishment is 10 years to life.   The
movant was sentenced to a term of imprisonment or 240 months under
a Base Offense Level of 32, which necessitated the attribution of
between 1,000 and 3,000 kilograms of marijuana.   The cocaine was
converted to a marijuana amount for purposes of computation.   The
range of punishment for the combined quantities of cocaine and
marijuana was deemed to be 210 months to 262 months, while the guide-
line range of punishment for the actual marijuana, 362.7 kilograms,
would have been 120 months to 150 months.

The lack of evidence of unanimity as to both objects of the
conspiracy is sufficient to mandate that the sentence be vacated, set
aside, or corrected under 28 U.S.C. §2255.   Counsel was deficient for
failing to insure that the verdict was both unanimous and unambiguous.
The movant was prejudiced to the extent of at least 90 months in his
overall sentence.   The jury was entitled to separately rule upon
both the marijuana and the cocaine.   An appropriate verdict form

and instructions would have resulted in a different outcome.  The movant is actually innocent of the charges, as specifically set forth in the foregoing issues.

### IX.  THE MOVANT WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT WHEN APPELLANT COUNSEL RAISED ONLY ONE OF THE FOREGOING ISSUES BEFORE THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT DURING THE DIRECT APPEAL

The foregoing issues all have merit and reasonable jurists could disagree upon the outcome.  Appellate counsel only raised sufficiency of the evidence on all counts and the admission of prior bad acts during the movant's direct appeal to the United States Court of Appeals for the Fifth Circuit.

The movant communicated with his appellate counsel during the pendency of the appeal and unequivocally insisted upon the inclusion of all grounds set forth herein in the direct appeal.  Thus, appellate counsel's representation was deficient to the extent contemplated in Strickland.  Any procedural bar which might possibly be argued by the United States with respect to the foregoing issues is attributable to the deficiencies of appellant counsel.  In addition, a greater degree of prejudice is presented at this juncture based upon the differing standards of review for a direct appeal and a collateral attack.

### CONCLUSION

The foregoing argument aptly demonstrates that the movant's sentences and convictions must be vacated, set aside, or corrected pursuant to 28 U.S.C. §2255.

**WHEREFORE,** the movant, **MARK ANTHONY MARTINEZ, pro se,** respectfully moves this Honorable Court to vacate, set aside, or correct his sentences and convictions pursuant to 28 U.S.C. §2255; and the movant respectfully requests that the court grant such other general relief that the court might deem just, fair, and equitable under the circumstances set forth herein.

*Mark Anthony Martinez*
**MARK ANTHONY MARTINEZ**
**Pro Se**